## Stone v. Prudential Insurance Company of America

*Robert W. McWhinney*, for plaintiff.

*Charles E. Kenworthey, John H. Scott, Jr.,* and *Reed, Smith, Shaw & McClay*, for defendant.

MARSHALL, J., February 21, 1957.—This action was brought to collect the proceeds of a life insurance policy. The court directed a verdict in this case in favor of defendant and plaintiff has made a motion for a new trial.

On July 29, 1955 the insured, George E. Stone, executed an application for the cash surrender value of the policy in question. The application contained a request for payment to the insured of the cash surrender value of the policy and it also recited the following:

"It is understood, however . . . this application for cash surrender shall be of no effect if this application is withdrawn before issuance of the check, or if the insured dies before the delivery or tender of the check." The application was not withdrawn before the issuance of the check.

The insured was alive on August 8, 1955, and was seen again before 1 p.m. when he left his home saying he would be back. The check for the cash surrender value of said policy was delivered to the residence of George E. Stone on August 8, 1955.

At least, according to the testimony of George Moniot in charge of cash surrender applications for defendant, it had been approved by the company in Newark, N. J., on August 5, 1955, which was a Friday, and deposited in the mails on the same day. It is true that Mr. Moniot was not present when the various stamps showing the processes took place and when the application was filed. But as the head of the department, he could tell from the various stamps on the applications and the notations on the check when everything was done. His testimony was admitted and we refused to strike the same out as we believe that the big business matter rule permitted him to testify and the check certainly should have been presented, even though the answer sufficiently denied the same, in the usual course of the mails on August 8.

On September 5, 1955, the body of George E. Stone, the deceased, was discovered in the Arkansas wilderness. On September 6, 1955, an autopsy was performed by the State Medical Examiner for the State of Arkansas. His findings, which were introduced into evidence, included the opinion that death had occurred 15 to 26 days prior to the autopsy. According to his estimate and using the greatest number of days, George E. Stone was alive at least as late as August 10, 1955. This corroborates Moniot's testimony for the company.

In addition to this, at the time that Mr. Stone was found in the wilderness of Arkansas, there was discovered near his body two stubs of bus tickets which had been issued in St. Louis, Missouri, on August 10, 1955, as a reissue of a ticket originally issued in Pittsburgh by the Poplar Bluff-Willow Springs Bus Line of Ironton, Mo., on August 10, 1955. These stubs were that part of a bus ticket usually retained for identification by the passenger using the ticket.

In the summer of that year the travel time of the bus between Pittsburgh and Arkansas was in excess of 18 hours, a circumstance which also corroborates the medical examiner's conclusion. Thus, the person seen alive in Munhall, Pa., on August 8 could not have died in Baxter County, Ark., on the same day.

We must remember that Mr. Stone executed an option for the cash surrender value of his policy. When it was accepted by the company, the transaction was completed subject to the two exceptions above referred to. We refer to 29 Am. Jur. 391, §475, which reads:

"The execution of a surrender agreement by an insured having the option to withdraw the accumulated net reserve in cash is not a mere offer which does not become effective unless the surrender value is paid within a reasonable time or before the death of the insured, but is an acceptance of the option or offer contained in the policy which makes the obligation of the insurer to pay absolute. Consequently, in such case, where the surrender value is not paid before the death of the insured, the estate, and not the beneficiary, becomes entitled to that sum, and the beneficiary may not rescind the insured's surrender of the policy because of the nonpayment of the cash surrender value prior to the death of the insured."

There is an absence of Pennsylvania citations on this question. But plaintiff does cite the case of Murphy v. Home Life Insurance Company of America, 47 D. & C. 197 (1942). In this case the policy was in default when the application for surrender was made. This case does hold that if a request is made when the policy is not in default, it amounts only to an offer which requires acceptance by the company prior to the insured's death. We believe this is dictum and is not the case before the court.

Regardless of this, we believe that the policy was processed and sent to plaintiff before he died as the

490

evidence indicates and the testimony of the medical examiner brought out by plaintiff.

Therefore, plaintiff's motion for a new trial will be refused.

*Order*

And now, to wit, February 21, 1957, motion filed ex parte plaintiff for a new trial is refused and it is further ordered that judgment be entered for defendant upon payment of the verdict fee.

Eo die, exception noted to plaintiff and bill sealed.